1

2

3                                                          **O**

4                                                    NO JS-6

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  JAMES H DONELL, Receiver for   )   Case No. CV 12-02319 DDP (JEMx)
    NewPoint Financial Services    )
12  Inc,                            )   ORDER GRANTING PLAINTIFF'S MOTION
                                    )   FOR SUMMARY JUDGMENT
13              Plaintiff,          )
                                    )   [Docket No. 15]
14       v.                         )
                                    )
15  SOHEILA MOJTAHEDIAN,            )
                                    )
16              Defendant.          )
    _____ )
17                                  )

18  **I. Background**

19       Plaintiff, James H. Donell ("Plaintiff" or "Receiver") is the

20  duly appointed and acting Receiver for the NewPoint Entities,

21  including NewPoint Financial Services, Inc. ("NewPoint").  The

22  Receiver was appointed on January 8, 2010, pursuant to an order of

23  the United States District Court for the Central District of

24  California in Case No. 10-7 CV-0124-DDP (JEMx), <u>S.E.C. v. NewPoint</u>

25  <u>Financial Services, Inc., et al.</u> ("SEC Case").  (Statement of

26  Genuine Issues ("SGI") ¶ 1.)  NewPoint is a Nevada company which

27  was created and operated by John Farahi.  (<u>Id.</u> ¶ 2.)  Farahi was

28  the co-owner, president, secretary and treasurer of NewPoint.  (<u>Id.</u>

¶ 3.)  NewPoint, controlled by Farahi, offered and sold millions of dollars of debentures to numerous investors.  (Id. ¶ 4.)

In his June 4, 2012, plea agreement, Farahi admitted that he generally used investor funds to make interest and principal repayments to previous investors, to pay personal expenses, and to finance higher-risk futures options.  (Davidson Decl. Ex. D at 30 ¶¶ g, j.)  In other words, Farahi admitted in his plea agreement that he was engaged in a Ponzi scheme, which is "any sort of fraudulent arrangement that uses later acquired funds or products to pay off previous investors."  In re Agricultural Research Technology Group, Inc., 916 F.2d 528, 531 (9th Cir. 1990).  The plea agreement states that the Ponzi scheme began "at least as early as in or about November 2005, and continuing to in or about April 2009."  (Davidson Decl. Ex. D at 28.)  According to the plea agreement, as a result of the Ponzi scheme and fraud, NewPoint investors lost millions of dollars.  (Davidson Decl. Ex. D at 30 ¶¶ g, j.)

Defendant Soheila Mojtahedian ("Defendant") states that in 2001 she invested $200,000 with Farahi.[1]  (Mojtahedian Decl. § 2.) Defendant received payments from the NewPoint Entities on her investment totaling $240,000.  (SGI ¶ 19.)  The only payment she received on or after November 2005 was in December of that year for an amount of $203,500.  (Grobstein Decl. ¶ 17 Ex. 1.)

///

///

---

[1]It appears that the name of the company she invested with was called NewPoint Investments, Inc.  (Mojtahedian Decl. Ex. 1.) However, Defendant received most of her payments from NewPoint. (Id. Exs. 2-4)

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

III. **Analysis**

The Uniform Fraudulent Transfer Act ("UFTA") as adopted by California states in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of

4

1                       the debtor were unreasonably small in relation to

2                       the business or transaction.

3                       (B) Intended to incur, or believed or reasonably

4                       should have believed that he or she would incur,

5                       debts beyond his or her ability to pay as they

6                       became due.

7    Cal. Civ. Code § 3439.04(a).[2]  "Where causes of action are brought

8    under UFTA against Ponzi scheme investors, the general rule is that

9    to the extent innocent investors have received payments in excess

10   of the amounts of principal that they originally invested, those

11   payments are avoidable as fraudulent transfers."  Donell v. Kowell,

12   533 F.3d 762, 770 (9th Cir. 2008).

13        The Ninth Circuit has adopted a two-step approach to determine

14   how much, if anything, a receiver can recover from a "winning" but

15   innocent investor in a Ponzi scheme.  Kowell, 533 F.3d at 771.

16   Step one determines the investor's liability with the "netting

17   rule": "Amounts transferred by the Ponzi scheme perpetrator to the

18   investor are netted against the initial amounts invested by that

19   individual.  If the net is positive, the receiver has established

20   liability, and the court determines the actual amount of liability,

21   which may or may not be equal to the net gain, depending on factors

22   such as whether transfers were made within the limitations period

23   or whether the investor lacked good faith."  Id.

24        In step two, "to determine the actual amount of liability, the

25   court permits good faith investors to retain payments up to the

26   ─────────────────

27        [2]"Notwithstanding the quoted language above, all courts
     construing UFTA state that there is an 'or' between subsections
28   (a)(1) and (a)(2)."  Donell v. Kowell, 533 F.3d 762, 767 n.1 (9th
     Cir. 2008).

amount invested, and requires disgorgement of only the 'profits' paid to them by the Ponzi scheme." Id. at 772.

Here, Farahi admitted NewPoint's Ponzi scheme in his plea agreement, and Defendant admitted to receiving a $40,000 profit on her investment with NewPoint.  Defendant claims that she is not liable to pay Plaintiff $40,000 for three reasons.  First, Farahi's plea agreement is not evidence of a Ponzi scheme.  Second, this action is barred by the statute of limitations.  Third, under the statute of repose, she is only liable to pay Plaintiff $7,000, not $40,000.

As to Defendant's first argument, the Ninth Circuit has decided that Farahi's plea agreement is conclusive evidence of the Ponzi scheme: "[T]he plea agreement preclusively establishes that [the Ponzi scheme's operator's] transfers of purported profits to investors during his operation of the Ponzi scheme were made with the actual intent to defraud." In re Slatkin, 525 F.3d 805, 813 (9th Cir. 2008).  Defendant states that even if the plea agreement is conclusive evidence of a Ponzi scheme, it is not conclusive evidence that NewPoint was a Ponzi scheme at the time Defendant received payments from NewPoint.  NewPoints' final payment to Defendant was in December 2005, and Farahi's plea agreement states that the Ponzi scheme began "at least as early as in or about November 2005." (Davidson Decl. Ex. D at 28.)  The "at least as early as" language suggests that the Ponzi scheme had begun by the end of November 2005.  However, the "in or about" language creates some doubt as to whether a Ponzi scheme existed in December 2005.

Some doubt, though, is permissible.  Here, because Plaintiff bears the burden of proving a Ponzi scheme to be entitled to

1  summary judgment he "must come forward with evidence which would

2  entitle [him] to a directed verdict if the evidence went

3  uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536

4  (9th Cir. 1992).  Because the plea agreement suggests that the

5  Ponzi scheme was in existence by November 2005, "the burden shifts

6  to [the non-moving party] to set forth specific facts" that

7  indicate the Ponzi scheme began after NewPoint's December 2005

8  transfer to Defendant.  Id. at 1537.  However, Defendant presents

9  no evidence of when the Ponzi scheme began.  Thus, the only

10  reasonable conclusion is that it was in existence at the time of

11  the December transfer, and thus summary judgment is appropriate on

12  this issue.

13      Plaintiff states that Receiver had sufficient information to

14  file this lawsuit more than a year before he did, and, thus, the

15  action is barred by the statute of limitations.  The relevant

16  statute of limitations states: "A cause of action with respect to a

17  fraudulent transfer or obligation under this chapter is

18  extinguished unless action is brought . . . within four years after

19  the transfer was made or the obligation was incurred or, if later,

20  within one year after the transfer or obligation was or could

21  reasonably have been discovered."  Cal. Civ. Code § 3439.09(a)

22  (emphasis added).  Because the statute of limiatations is an

23  affirmative defense, Defendant bears the burden of proving that it

24  bars the instant case.  Warfield v. Carnie, 3:04-CV-633-R, 2007 WL

25  1112591, at *19 (N.D. Tex. Apr. 13, 2007).

26      Defendant presents evidence that Receiver knew more than a

27  year in advance of filing this case that NewPoint made transfers to

28  Defendant.  (Donell Decl. ¶ 8; Grobstein Decl. Ex. 2.)  However,

1   Defendant's receipt of funds, alone, could not establish whether
2   she received a net profit or a net loss from the Ponzi scheme.  It
3   only established that she likely invested with NewPoint.  As one
4   district court noted in analyzing an equivalent statute of
5   limitations under similar circumstances, knowledge of an
6   individual's status as an investor is insufficient to begin running
7   the statute of limitations: "Defendants provide no evidence to the
8   Court that the Receiver's mere knowledge of the Ponzi scheme,
9   knowledge of the identities of many of its investors, and
10  knowledge, specifically, that the Carnies were investors somehow
11  put him on notice that the Carnie Defendants reaped a net profit
12  from their investments." <u>Carnie</u>, 2007 WL 1112591 at *18-19
13  (holding that there was no triable issue of fact regarding the
14  statute of limitations).[3]

15      Additionally, Plaintiff's evidence indicates that preparing
16  the numerous Receiver actions related to the NewPoint Ponzi scheme
17  was a massive undertaking, which included reviewing tens of
18  thousands of transactions.  (Grobstein Decl. ¶ 6.)

19      Because the statute of limitations is an affirmative defense,
20  Plaintiff is entitled to summary judgment on this issue if he can
21  demonstrate that "there is an absence of evidence to support the
22  nonmoving party's [affirmative defense]." <u>Celotex</u>, 477 U.S. at
23  323.  Receiver has met this burden because Defendant's evidence did
24  not indicate to the Receiver whether she received a net profit or a
25  net loss.  Defendant's evidence, then, essentially amounts to

26  _____

27      [3]The Court recognizes that California law governs the statute
    of limitations analysis.  Although <u>Carnie</u> is not a California case,
28  it is persuasive authority in light of its similarities with the
    instant cases.

1  speculation–speculation that Receiver should have been able to

2  discover within a year of learning that NewPoint transferred funds

3  to Defendant facts sufficient to meet Rule 11 obligations for

4  bringing this case against Defendant.  Speculation, though, is

5  insufficient, as Plaintiff was required to "set forth specific

6  facts showing that there is a genuine issue for trial."  Anderson,

7  477 U.S. at 256.   Thus, because Defendant has no evidence that, in

8  light of the time-consuming nature of analyzing NewPoint's records

9  (discussed further in footnote four), Plaintiff should have

10  discovered his cause of action against Defendant sooner than he

11  did, Defendant has not met her burden for preventing summary

12  judgment.[4]

13  _____

14      [4]Defendant also states that a "First Report" supports her
   statute of limitations argument.  (Opposition at 8:8-24.)  However,
15  this First Report does not appear to have been submitted to the
   Court for consideration in the instant case.  Were it submitted,
16  though, it would have been inconsequential.  The First Report was
   submitted in the SEC case at Docket No. 232.  Although the First
17  Report indicates that as of June 30, 2010 Receiver had received
   copies of the relevant financial information from NewPoint's bank
18  accounts, it also indicated that numerous documents needed to be
   reviewed before recovery actions, such as this case, could be
19  brought.  The First Report noted that NewPoint used more than fifty
   bank accounts, and transferred "substantial amounts of money among
20  the bank accounts on a regular, and sometimes, daily basis."
   (First Report ¶¶ 10-11.)  Defendant's speculation that Receiver
21  knew he had, or should have known he had, sufficient information to
   bring the instant action is insufficient.  See Janvey v. Alquire,
22  No. 3:09-CV-0724-N, 2013 WL 2451738, at *11 (N.D. Tex. Jan. 22,
   2013) ("[G]iven the size and scope of the Stanford scheme,
23  discovering the fraudulent nature of the Net Winning transfers
   certainly takes time.  Further, the burden is on the Net Winners to
24  [prove the statute of limitation bars the action.]  No Net Winners
   offer any evidence that the Receiver actually knew of the
25  fraudulent nature of any of these interest transactions but failed
   to file suit within a year.  Accordingly, the Receiver's claims are
26  not barred by limitations.");  see also Carnie, 2007 WL 1112591 at
   *19 ("Defendants merely make conclusory assertions regarding when
27  the Receiver knew of the facts giving rise to the claims against
   them.  Under the summary judgment standard, these conclusory
28  assertions are insufficient.  Therefore, the Receiver timely filed
                                                    (continued...)

1    Defendant also states that as a matter of law, Receiver Donell

2  only had one year from the date of his appointment as Receiver to

3  bring the instant case.  The statute of limitations indicates that

4  an individual has a year from the date he discovered or could have

5  discovered a Ponzi scheme to file suit.  Cal. Civ. Code §

6  3439.09(a).  Defendant states that because Receiver was appointed

7  for the purpose of discovering fraud, the one-year fraud discovery

8  period began running the day he was appointed Receiver.  Defendant

9  cites the Supreme Court case of Gabelli v. S.E.C., 133 S. Ct. 1216

10 (2013), in support of this argument.  However, Gabelli only held

11 that "the fraud discovery rule has not been extended to Government

12 enforcement actions for civil penalties." Id. at 1222.  Gabelli is

13 distinguishable on two grounds.  First, Receiver is not the

14 Government. Sec. Pac. Nat'l Bank v. Geernaert, 199 Cal. App. 3d

15 1425, 1431-32 (1988) ("A receiver is an officer or representative

16 of the court  appointed to manage property that is the subject of

17 litigation.").  Second, this case does not involve civil penalties,

18 i.e. an attempt to punish Defendant as a wrongdoer; Plaintiff only

19 seeks a return of Defendant's profits to minimize the losses of

20 NewPoint's other victims.  Compare Gabelli, 133 S. Ct. at 1223,

21 1218 ("The discovery rule helps to ensure that the injured receive

22 recompense.  But this case involves penalties, which go beyond

23 compensation, are intended to punish, and label defendants

24 wrongdoers.")

25

26 _____

27    [4](...continued)
   suit against the Carnie Defendants as a matter of law.")

28

1    Next, Defendant argues that the statute of repose limits her
2    liability to $7,000.  The relevant statute of repose states:
3    "Notwithstanding any other provision of law, a cause of action with
4    respect to a fraudulent transfer or obligation is extinguished if
5    no action is brought or levy made within seven years after the
6    transfer was made or the obligation was incurred."  Cal. Civ. Code
7    § 3439.09(a).  Defendant claims that only two transfers from
8    NewPoint to her were within the statute of repose's seven-year
9    period: one on July 14, 2005 for $3,500 and one on December 13,
10   2005 for $203,500.  (Opposition at 12:16-22.)  Because her
11   investment's principal was $200,000, Defendant states, her maximum
12   liability is $7,000.  Defendant is incorrect.
13       Defendant received $33,000 from NewPoint in transfers that
14   occurred outside the statute of repose's seven year window.  The
15   Ninth Circuit has held that in fraudulent transfer cases, when some
16   transfers occur outside the statute of limitations and some occur
17   within the statute of limitations, a court "may presume that the
18   earliest payments received by the investor are payments against the
19   investor's claim for restitution."  Kowell, 533 F.3d at 774 (9th
20   Cir. 2008).  That is to say that a court may presume that payments
21   made outside the statute of limitations are repayments on an
22   investor's principal.  See id.  There is no reason to believe that
23   the Ninth Circuit's ruling on the statute of limitations does not
24   also apply to the statute of repose.  Thus, because Defendant
25   received a net profit of more than $40,000, and because she
26   received more than $40,000 in transfers during the statute of
27   repose's seven year window, the statute of repose does not prevent
28   Plaintiff from collecting the $40,000 he seeks.

1    Finally, Defendant requests to continue the instant case until

2 she can take Farahi's deposition, which she estimated would occur

3 within 60 days.  (Bluver Decl. ¶ 7.)  That request, however, was

4 made in early March of this year, roughly 6 months (about 180 days)

5 ago.  Defendant has filed no supplemental information with the

6 Court regarding the Farahi deposition, such as whether it has

7 occurred, would occur, or was still necessary to occur.  Since

8 Defendant must provide this Court with all information necessary to

9 rule in her favor, Cent. Dist. L. R. 7-5, and since Defendant has

10 already had approximately three times as many days as she requested

11 to conduct the Farahi deposition, Defendant's request to continue

12 the instant hearing fails.  See Everson v. Leis, 556 F.3d 484, 493

13 (6th Cir. 2009) (explaining that the party moving for a Rule 56(d)

14 continuance bears the burden of proving its propriety).

15 **IV.  Conclusion**

16    For the reasons stated herein, Plaintiff's Motion is GRANTED.

17 Defendant must pay Plaintiff $40,000 plus prejudgment interest of

18 $2,845.97.[5]

19 IT IS SO ORDERED.

20 Dated: September 12, 2013

21                              DEAN D. PREGERSON
                               United States District Judge

22

23

24    [5]Receiver is entitled to prejudgment interest of 7%.  Cal.
Const. Art. XV.  However, Receiver has only provided the Court with
25 calculations of what prejudgment interest would have been had this
Motion been heard on March 25, 2013, the Motion's originally
26 scheduled date.  (Davidson Decl. ¶ 2.)  Receiver's Reply Brief,
which was filed on August 5, 2013, does not provide any new
27 calculations, nor does it ask for an amount greater than $2,845.97.
Since Plaintiff must provide the Court with sufficient information
28 to rule in his favor, Cent Dis. L. R. 7-5, this Court will award
$2,845.57 in prejudgment interest.